UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-14290-CIV-MAYNARD

PATTI JO BARCUS,

    Plaintiff,

v.

ANDREW SAUL, Commissioner,
Social Security Administration,

    Defendant.

_____/

## ORDER ON THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT (DE 15 & 16)

**THIS CAUSE** comes before this Court upon the above Motions. Having reviewed the Motions, Defendant's Response (DE 19), and Administrative Record[1], and having held a hearing on April 28, 2020, this Court finds as follows:

## BACKGROUND

The Plaintiff applied for disability insurance benefits under Title II and supplemental security income under Title XVI of the Social Security Act. The application set was denied initially and after reconsideration. On August 29, 2018, after holding a hearing, an Administrative Law Judge ("ALJ") rendered a decision finding the Plaintiff not disabled under the terms of the Act. The Appeals Council denied the Request for Review on June 13, 2019, thereby leaving the ALJ's decision final and subject to judicial review.

The Plaintiff has a four year college education which she completed in 1992. The earnings record at page 222 shows ongoing employment since 1999, but it is an employment

---

[1] The Administrative Record is found at DE 12. For the below citations to it, this Court uses its Bates-stamped page numbers (and not the docket entry's page numbers).

history that consists of frequent job changes. At the hearing the Vocational Expert identified the jobs of waitress, hotel front desk clerk, dog bather, dog trainer, and cashier as her past relevant work during the relevant time period.

The medical record begins October 12, 2011 when the Plaintiff returned to the mental health clinic at Tri-County Human Services in Highlands County. She saw ARNP Rackauskis-Anderson, who is her treatment provider of record. The Plaintiff returned to the clinic because a new job was causing her mental health condition to worsen. She was constantly being yelled at, and that was destabilizing her mood. The Plaintiff was experiencing intermittent episodes of both depression and anxiety. ARNP Rackauskis-Anderson observed the Plaintiff to have an anxious affect, impaired concentration and focus, and impaired insight and judgment. ARNP Rackauskis-Anderson entered the diagnoses of bipolar disorder, generalized anxiety disorder, and history of polysubstance dependence. She renewed the Plaintiff's prescriptions.

It was on December 22, 2010, nearly a year earlier, when the Plaintiff last had come in for treatment, ARNP Rackauskis-Anderson recalled. The Plaintiff had a history of inconsistent treatment. She did not keep regular appointments, and she did not take her psychotropic medications on a consistent basis. There were two main reasons for the lack of full treatment compliance. Fluctuating employment---and with it a fluctuating ability to pay for treatment and prescriptions---was one barrier. Her mental health condition, itself, was the second barrier. Anxiety hindered her ability to keep appointments, and limited insight into her condition hindered her pursuit of treatment. Her inconsistent pursuit of treatment prevented the optimal management of her mental health. This time, however, the Plaintiff was making a greater effort at pursuing treatment.

Subsequent treatment notes from ARNP Rackauskis-Anderson show continued mood instability and its adverse impact on her ability to work. In November 2011 the Plaintiff reported that she was working only two days a week as a waitress and having difficulty finding work. At the next appointment in March 2012 she reported that she had quit her job. Anxiety was hindering her ability to go in. She had run out of her prescriptions, and without a car it was difficult to make treatment appointments.

Her mood still was unstable at her next appointment in August 2012. Shortly after that appointment, on September 6, 2012, the Plaintiff filed for Social Security disability benefits. It was the first of several applications that she filed that eventually culminated in the Decision under judicial review here. In that initial application the Plaintiff claimed a disability onset date of November 1, 2011 coinciding with the time when she was having difficulty with her waitress job. Treatment inconsistency and lack of medication---and ongoing mood instability---continued to be an issue through January 2013.

Then in May 2013 she reported that she had moved in with a friend, was taking care of pets, and had started a part-time job at a plant nursery. She now was experiencing less anxiety, and her mood was more stable.

She was working for a friend at the plant nursery under accommodative conditions. (For that reason the Vocational Expert did not count this job as past relevant work.) Despite the accommodative setting, the Plaintiff's job performance was unsatisfactory. She initially was assigned outside jobs such as weeding, but her obsessive tendencies caused her to be too slow at it. She therefore was re-assigned to the office to do a clerical job, but she had difficulty managing the multiple tasks that it required. Despite the accommodative setting, she found the

job stressful, and she reacted defensively to supervisors' complaints. By July 2014 she had been fired.

Nevertheless the Plaintiff was benefitting from the renewed effort at treatment, as ARNP Rackauskis-Anderson noted at the appointment on July 23, 2014. She now was doing volunteer animal rescue work.

That period of improvement came to an end in January 2015. The Plaintiff no longer was working at all. She recently had moved in with her mother to help her through her cancer treatment. She was not getting along with her mother, and the added stress of moving in, giving up her pets, the caregiving demands, and recent treatment non-compliance had caused her mental health to worsen.

ARNP Rackauskis-Anderson describes the Plaintiff as having a long history of a mood disorder, anxiety, and obsessive-compulsive disorder. The Plaintiff's mood instability condition is noteworthy for its unusually intense and rapid cycling between mood extremes, ARNP Rackauskis-Anderson noted. She also exhibits poor decision-making and impulsivity.

Earlier in her life, the Plaintiff was able to keep jobs for longer periods of time, but during the time period relevant to her disability claim, she lost jobs more quickly. She would be fired for absenteeism or poor job performance, or most often the case she simply would stop going to the job. Her mental health condition played a role in her inability to keep a job. At page 485 the Plaintiff explained how manic episodes would enable her to look for work or take on volunteering projects but she quickly would decompensate into a depressed mood thereafter. Or, alternatively, anxiety would discourage her from going into the workplace. She also becomes sensitive to being judged and defensive about criticism. ARNP Rackauskis-Anderson saw the same connection between the Plaintiff's mental health condition and her inability to keep a job,

as she noted in her treatment notes at pages 353, 361, and 512, for example. Given her work-related mental health impairments, ARNP Rackauskis-Anderson encouraged the Plaintiff to apply for Social Security disability benefits (as well as encouraged her to maintain the focus needed to see the application process through).

The treatment notes show that Plaintiff engaged in other kinds of productive activities beyond formal work. At times she would volunteer for animal rescue-related projects---although her mental health condition similarly hindered her ability to stay at them. For example, as noted at page 489, she undertook animal welfare advocacy projects but had to give them up after she became overwhelmed by them. She maintained a good working relationship with her volunteer coordinator, nevertheless. The Plaintiff also undertook side-job activities such cleaning house, yardwork, or running errands for neighbors.

The Plaintiff has a history of polysubstance abuse from earlier in her life, ending in 2005. That history of drug abuse continues to affect the Plaintiff's memory and cognitive functions as well as be a source of friction between her and her mother, ARNP Rackauskis-Anderson observed. The Plaintiff claims full sobriety during the time period relevant to the instant disability claim. The medical record contains no express evidence of relapse or of drug or alcohol use. However ARNP Rackauskis-Anderson did suspect drug use given the Plaintiff's reluctance to participate in drug tests, overt signs of cognitive and speech impairment, and the Plaintiff's access to her mother's medications. She expressed those suspicions between May and September of 2015. At the hearing the Plaintiff asserted continued full sobriety and stated that she goes to AA meetings frequently. She explained that during that period of time between May and September of 2015, her mental health condition was especially severe and was manifesting symptoms that might have raised those suspicions. In her Decision the ALJ credited the Plaintiff

with long term sobriety and found her polysubstance related disorder to be a non-severe condition.

The Plaintiff refiled her disability application on January 19, 2016. At page 238 is a letter from a person at a non-profit agency. The writer describes the Plaintiff's mental health condition and how it impairs her functioning and ability to maintain employment. That writer expresses opinions consistent with those of ARNP Rackauskis-Anderson.

At the February 23, 2016 appointment with ARNP Rackauskis-Anderson, the Plaintiff reported worsening depression despite medication compliance. She was feeling overwhelmed by her caregiving responsibilities. Later at the administrative hearing the Plaintiff would amend her disability onset date to February 23, 2016 because this was the point in time when she felt that the record better supports her disability claim.

In March and April 2016 ARNP Rackauskis-Anderson noted how the Plaintiff's condition remained unrelieved by medication. ARNP Rackauskis-Anderson attributed the Plaintiff's current decompensation to the stress of living with and caring for her ill mother. On April 26, 2016 she saw LCSW Stephen Phillips for a consultative psychological evaluation at ARNP Rackauskis-Anderson's request. The Plaintiff recalled lifelong difficulty keeping a job because of her mental health condition and an earlier history of substance abuse. She recalled losing her job at the plant nursery and inability to work at the Humane Society because of difficulty dealing with the public and panic attacks. LCSW Phillips observed the Plaintiff to have some memory and cognitive difficulties. During the course of the evaluation she also was distractible and became tearful and overwhelmed.

On May 11, 20116 another clinician at the Tri-County clinic conducted an evaluation. ARNP Rackauskis-Anderson wanted that clinician's second opinion about the unremitting nature

of the Plaintiff's mental health symptoms. The clinician recommended additional therapy with a Peer Specialist and AA meetings.

On May 16, 2016 ARNP Rackauskis-Anderson made the first express mention of medication-resistant depression and anxiety. ARNP Rackauskis-Anderson expressly acknowledged that the Plaintiff now was making a significant and sincere effort at treatment to deal with her condition. ARNP Rackauskis-Anderson also acknowledged the contributory role that the stress of living with and caring for her ill mother was playing. ARNP Rackauskis-Anderson referred her to a therapist, but the Plaintiff could not afford that additional treatment. Although the record contains no treatment notes from a therapist, there is indication that the Plaintiff was receiving additional therapeutic services. She received therapeutic counseling through the Volunteers of America service, and she received therapy services from Hospice in conjunction with her caregiving responsibilities for her mother.

At this point in time the focus of the treatment notes shifts to the unresponsive nature of the Plaintiff's mental health condition. Multiple psychotropic medications and intensive therapy had achieved only a slight improvement. ARNP Rackauskis-Anderson also continued to note the situational nature of the Plaintiff's depression and how the stressors at home contributed to it.

Even if only by a small degree, there had been some improvement, however. She no longer sobbed during appointments or became upset. Her insight and judgment had improved. She appeared less anxious. Her mood was more stable, and the Plaintiff no longer was experiencing manic episodes. Depression now was the predominate symptom, and it remained as such through the end of 2016.

Then in 2017 anxiety became the predominate symptom. It was during 2017 when the Plaintiff also began going to the hospital with complaints of respiratory and cardiac-type

discomforts. At an appointment in November 2017 the Plaintiff told ARNP Rackauskis-Anderson that she was experiencing panic attacks with associated respiratory and cardiac-type symptoms.

The Plaintiff remained compliant with her mental health care. At the start of 2018 her anxiety was easing. ARNP Rackauskis-Anderson noted substantial improvement albeit with lingering depression. At an appointment on February 7, 2018 ARNP Rackauskis-Anderson observed the Plaintiff to have a depressed mood, impaired concentration, and slightly impaired cognition.

At page 573 the record contains a letter from LCSW Phillips at the local chapter of Volunteers of America. (LCSW Phillips is the same person who conducted the consultative psychological evaluation earlier in April 2016 and who had been providing regular therapy since June 2016.) In his letter, dated April 25, 2018, LCSW Phillips described how the Plaintiff "continues to struggle with her depression and anxiety" despite having "made some improvements" with ongoing intensive treatment. LCSW Phillips also noted the Plaintiff's attempts to volunteer but with "limited success at even being able to do this on a regular basis." LCSW Phillips concluded his letter by opining that the Plaintiff "appears unable at this time to hold any type of employment" because of "her anxiety and depression".

The ALJ held a hearing on the Plaintiff's disability claim on May 2, 2018. The Plaintiff explained the various ways in which her mental health condition hinders her ability to work. Anxiety hinders her ability to make it to work. If at work, she easily becomes overwhelmed. She is prone to crying spells. She has insufficient concentration and memory to learn job tasks, follow directions, or engage in basic multi-tasking. Her mind wanders, and she will begin to ruminate about distressing thoughts. She is defensive about criticism, and she becomes angry

quickly. She continues to experience these mental health impairments despite the benefit of ongoing, consistent, and intensive treatment. With her mother's cancer in remission, she now has fewer caregiving responsibilities, but her mother needs help nonetheless. Her mother no longer is able to drive, for example. The Plaintiff socializes with neighbors, and she continues to have pets.

Also testifying at the hearing was a Vocational Expert ("VE"). The ALJ asked the VE to consider someone who is limited to performing simple, routine, and repetitive tasks and to simple decision-making. The ALJ added the social limitations to occasional contact with supervisors and co-workers and to only infrequent, incidental, and superficial contact with the general public. Regarding concentration, the ALJ limited this hypothetical person to maintaining concentration, persistence, and pace to two-hour increments; normal work breaks plus an additional 9% of the workday spent off-task; but no fast-paced or strict quota-based work. This hypothetical person would miss on average one day of work a month or twelve days a year.

The VE identified several jobs that a person with the same vocational profile as the Plaintiff and the above work limitations could do. The VE identified the job of dog bather (which was one of the Plaintiff's past jobs) as well as the jobs of hand packager, commercial cleaner, and warehouse worker.

The Plaintiff went to a consultative psychological evaluation on May 24, 2018, at the ALJ's request. The psychologist observed the Plaintiff to have a cooperative and positive attitude (the same as ARNP Rackauskis-Anderson observed that February, this Court notes). The psychologist described the Plaintiff's remote memory as good and her insight as fair. However the psychologist also observed slow cognition, borderline intellectual functioning, and an obsessive focus. The psychologist diagnosed major depressive disorder and generalized anxiety

disorder and rated the Plaintiff's current mental health condition to be of a moderate degree of severity. The psychologist gave a guarded prognosis. The consultative report begins at page 576.

The psychologist also filled out a questionnaire to rate the Plaintiff's work-related impairments. The psychologist opined that the Plaintiff's ability to do simple work-related tasks and to interact with the public is moderately impaired. Her ability to understand and remember complex instructions and to interact with supervisors or co-workers is markedly impaired. Lastly her ability to carrying out complex instructions, to make judgments on complex work-related decisions, and to handle usual work situations and changes in the work routine is extremely impaired. That questionnaire begins at page 578.

The ALJ found the Plaintiff to have the severe impairments of anxiety, bipolar disorder, depression, intermittent explosive disorder, personality disorder, and obsessive-compulsive disorder. The ALJ found the Plaintiff's mental health condition to pose no more than a moderate degree of impairment and thus not to be of Listing-level severity. At Step Four of the disability analysis, the ALJ assessed a Residual Functional Capacity ("RFC") that contained the same limitations as the hypothetical that she had given to the VE.

The ALJ found that RFC to permit the Plaintiff to perform her past job as a dog bather. The ALJ found that RFC to permit the Plaintiff to perform the additional jobs of packager, commercial cleaner, and warehouse worker, too. The ALJ relied on the VE's testimony in making those vocational findings. The ALJ also considered the consistency of the VE's testimony with the <u>Dictionary of Occupational Titles</u> ("DOT") pursuant to SSR 00-49 and found those two sources of evidence to be consistent. The ALJ therefore concluded that the Plaintiff is not disabled.

## **STANDARD OF REVIEW**

Judicial review of the Commissioner's decision is limited to a determination of whether it is supported by competent, substantial evidence and whether the proper legal standards were applied. See Lewis v. Callahan, 125 F.3d 1436 (11th Cir. 1997). If the decision is supported by competent, substantial evidence from the record as a whole, a court will not disturb that decision. See 42 U.S.C. § 405(g) (requiring the reviewing court to take as "conclusive" those fact findings that enjoy the support of "substantial evidence". Substantial evidence is such relevant evidence that a reasonable person might accept as adequate to support the conclusion reached. See Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019). A court may not re-weigh the evidence or substitute its judgment for that of the ALJ. See Schink v. Comm'r, 2019 WL 4023639, *6 (11th Cir. 2019). While the Commissioner's fact findings enjoy deference, a court is free to review the Commissioner's legal analysis and conclusions de novo. See Ingram v. Comm'r, 496 F.3d 1253, 1260 (11th Cir. 2007). See generally, Washington v. Comm'r, 906 F.3d 1353, 1358 (11th Cir. 2018) (stating the general rule that the court will affirm the Commissioner's decision if substantial evidence supports it and if the Commissioner applied the correct legal standards).

## **DISCUSSION**

The Plaintiff challenges the basis by which the ALJ found her able to perform each of the four jobs identified. For three of the identified jobs---dog bather, hand packer, and warehouse worker---the Plaintiff argues that there is an apparent conflict between how the DOT defines their requirements and the VE's testimony that someone with her vocational profile can perform them. That existence of that apparent conflict, the Plaintiff argues, required the ALJ to consider it and to resolve it. See Washington v. Comm'r, 906 F.3d 1353 (11th Cir. 2018) (finding SSR 00-4p to impose upon an ALJ the affirmative and independent duty to take notice of any conflict

between a VE's testimony and the DOT and if one is present to resolve that conflict). Because the ALJ did make an express SSR 00-4p finding, the Plaintiff's argument is that the ALJ should have undertaken a more thorough consideration of the matter.

  This Court declines to issue a ruling on the Plaintiff's Washington-based argument over whether the ALJ adequately stated the finding that she can perform the jobs of dog bather, packager, or warehouse worker. That is because it is a moot point[2]. Even if the ALJ did make a Washington-based error with respect to those three jobs, there is no such issue with the ALJ's finding that the Plaintiff can perform the fourth identified job of commercial cleaner. An ALJ's conclusion of not disabled may stand even if it based on the ability to do just one kind of job. See Wooten v. Comm'r, 787 Fed.Appx. 671, 674 (11th Cir. 2019). Therefore the only dispositive question that the Plaintiff's Motion for Summary Judgment raises is whether the ALJ's finding that she can perform the job of commercial cleaner should be affirmed. This Court finds that an affirmance is warranted.

  To begin with, there is no conflict---whether apparent or actual---between the Plaintiff's RFC and the DOT's definition of the commercial cleaner job's requirements. The DOT rates the job as having a Reasoning Level of 1. Case law already establishes that a person who can perform simple, routine, and repetitive tasks can perform a job that require a Reasoning Level of 1. See Gater v. Saul, 2020 WL 597638, *4 (M.D.Fla. 2020) (citing Chambers v. Comm'r, 662 Fed.Appx. 869 (11th Cir. 2016)).

---

[2] Moreover this Court already has answered the question that the Plaintiff raises here. This Court already has found that a person who is limited to simple, routine, and repetitive work can perform a job that requires a Reasoning Level of 2 or 3. See Buckwalter v. Saul, 2019 WL 4277487, *12 (S.D.Fla. 2019).

Second, the Plaintiff argues that the record calls into doubt whether she is able to use commercial cleaning machinery. The Plaintiff says that she takes medication that comes with general advice not to operate machinery. That argument is too speculative to show reversible error, the Defendant argues, and this Court agrees. There is no evidence in the record that establishes exactly what the prescriptions advise. Nor does the Plaintiff report any adverse side-effects from her medications.

At the hearing the Plaintiff does discuss ways in which her limited concentration and impairment hinders her ability to do work-related tasks. At that point in her testimony, found at page 44, the Plaintiff recalls an incident when she tried to operate an electric hedge trimmer and did so in a way that potentially could have resulted in self-injury. How the occurrence of that hedge trimmer incident demonstrates an inability to operate commercial cleaning equipment is too speculative to support reversal, the Defendant argues, and this Court agrees. It seems reasonably unlikely that a commercial cleaning job would entail equipment that is similarly dangerous. This Court adds that the Plaintiff reports no problems being able to drive with a reasonable degree of safety. To the contrary, her caregiving responsibilities include driving her mother to appointments and for errands.

## **CONCLUSION**

Social Security law does not permit this Court upon judicial review to make its own decision about the Plaintiff's disability application. However judicial review does require this Court to ensure that the Decision comports with the governing law and regulations. The Plaintiff challenges the ALJ's vocational findings, but her arguments do not persuade this Court of the need for reversal or remand. Instead this Court finds that ultimately there is a sufficient basis by

which to affirm the Plaintiff's vocational findings and thus to affirm the ALJ's conclusion that she is not disabled.

It is therefore,

**ORDERED AND ADJUDGED** that the Plaintiff's Motion for Summary Judgment (DE 16) is **DENIED.** Seeing no grounds warranting reversal or remand, this Court **AFFIRMS** the Commissioner's decision, and this Court therefore **GRANTS** the Defendant's Motion for Summary Judgment (DE 15).

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this 8th day of July, 2020.

_____
SHANIEK M. MAYNARD
UNITED STATES MAGISTRATE JUDGE